**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| QIMONDA RICHMOND, LLC, et al., ) | Case No. 09-10589  (MFW) |
| ) | |
| ) | |
| Debtors. ) | |
| _____) | Jointly Administered |
| ) | |
| EPLG I, LLC, AS TRUSTEE FOR ) | |
| THE QR LIQUIDATING TRUST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 11-50603  (MFW) |
| ) | |
| CITIBANK, NATIONAL ASSOCIATION ) | |
| AND U.S. BANK, NATIONAL ) | |
| ASSOCIATION ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM OPINION[1]

Before the Court is the Motion of Citibank National Association ("Citibank") to Dismiss the Trustee's Complaint for failure to state a claim for relief.  For the reasons set forth below, the Court will deny the Motion.

I.   BACKGROUND

Qimonda North America Corp. and Qimonda Richmond, LLC, (collectively "the Debtors") are U.S. subsidiaries of an international company, Qimonda AG, that designs, develops,

_____

[1]  The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.

manufactures, and sells memory chip modules.

In January 2000, a predecessor of the Debtors borrowed $33,688,000 through the issuance of industrial revenue bonds by the Economic Development Authority of Henrico County, Virginia (the "Bonds") pursuant to an indenture (the "Indenture").  U.S. Bank serves as the Indenture Trustee for the Bonds.  In order to collateralize the Debtors' obligation to pay the bondholders, Citibank issued a letter of credit (the "LC") in the amount of $34,103,332 in favor of the Indenture Trustee.  Under the LC, Citibank assumed the obligation to pay the Indenture Trustee upon a valid draw notice.  In exchange for that undertaking, the Debtors agreed to reimburse Citibank if the LC was drawn and gave Citibank certain liens on their assets to secure that obligation. The LC had an initial expiration date of January 27, 2001, but automatically renewed in one-year increments unless Citibank notified the Indenture Trustee of its intent not to renew at least 90 days prior to the expiration date.  If Citibank declined renewal, the Indenture Trustee was entitled to draw on the LC.

As the financial crisis worsened throughout 2008, Citibank sought additional collateral for the Debtors' obligation to reimburse Citibank under the LC Agreement.  On September 19, 2008, the Debtors and Citibank entered into an agreement whereby the Debtors granted Citibank a security interest in additional collateral, certain equipment and funds in the Debtors' cash

collateral account held at Citibank (the "Additional Pledge").

In October 2008, Citibank provided the requisite 90-day notice to the Debtors and the Indenture Trustee that it would not renew the LC on the January 27, 2009, expiration date, triggering the Indenture Trustee's right to draw on the LC. The Debtors agreed to reimburse Citibank in full before or immediately after the Indenture Trustee drew on the LC or to re-pay the Bonds in full prior to a draw on the LC.

On November 23, 2008, the Debtors' cash balance in its deposit account at Citibank (the "Citibank Account") was zero. On December 2, 2008, the Debtors directed the Indenture Trustee to redeem the Bonds and on December 15, 2008, the Indenture Trustee sent a redemption notice to the bondholders. The Debtors then deposited funds into their Citibank Account (the "Deposit") for various purposes, including satisfying their obligation to reimburse Citibank under the LC. On December 31, 2008, the Debtors' cash balance in the Citibank account was $47,937,873. On January 2, 2009, Citibank debited the Debtors' account for $33,715,873 (the "Debit") and paid that amount to the Indenture Trustee which retired the Bonds. Citibank then released its liens against the Debtors' property.

On February 20, 2009, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Petition Date"). On February 11, 2011, the Trustee filed a Complaint

against Citibank seeking to avoid and recover fraudulent and preferential transfers.  Citibank filed a Motion to Dismiss the Complaint which the Trustee opposed.  Briefing is complete and the matter is now ripe for decision.

II.  <u>JURISDICTION</u>

This Court has core jurisdiction over this adversary proceeding.  28 U.S.C. §§ 1334 & 157(b)(2)(F) & (H).

III. <u>DISCUSSION</u>

A.  <u>Standard of Review</u>

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint.  <u>Kost v. Kozakiewicz,</u> 1 F.3d 176, 183 (3d Cir. 1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.").  A claim is deemed sufficient if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  A complaint is sufficient if the claim is "facially plausible," a determination that is based upon the reviewing court's "judicial experience and common sense." <u>Id.</u> at 1950.

The Third Circuit has implemented a two-part analysis:

4

"First the factual and legal elements of a claim should be separated.  The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). See also Iqbal, 129 S. Ct. at 1949-50 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").  "The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim."  Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.), Bankr. No. 03-12656, Adv. No. 08-50248, 2008 WL 4239120, at *4 (Bankr. D. Del. Sept. 16, 2008).

B.    Preferential Transfers

The Trustee seeks to avoid two allegedly preferential transfers to Citibank: the Deposit of more than $33 million into the Debtors' Citibank Account (creating a security interest in favor of Citibank on these funds) and the transfer of those funds from the Debtors' account to Citibank pursuant to the Debit. Citibank asserts three reasons why the Trustee's preference claims should be dismissed: (1) the Deposit and Debit fall within the safe harbor provisions of section 546(e) as a settlement payment or payments made "in connection with a securities

contract;" (2) Citibank was a fully-secured creditor and therefore could not receive more pursuant to the Deposit and Debit than it would have received in a liquidation; and (3) the preference claim with respect to the Deposit is facially deficient because it does not specify who deposited the funds into the account.

     1.   Section 546(e)

Citibank argues that both preference claims fail as a matter of law because the Deposit and Debit are settlement payments or made in connection with a securities contract and thus are protected from avoidance under section 546(e) of the Bankruptcy Code. Section 546(e) shields certain securities transactions from the trustee's avoidance powers for the purpose of promoting stability and finality in the securities markets. See Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del. v. Fleet Retail Fin. Grp. (In re Hechinger Co. of Del.), 274 B.R. 71, 83-84 (D. Del 2002).

The Bankruptcy Code defines a settlement payment as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). Settlement payments have been defined broadly by the Third Circuit to include "the transfer of cash or securities made to complete a

6

transfer payment." Brant v. B.A. Capital Co. (In re Plassein Int'l Corp.), 590 F.3d 252, 258 (3d Cir. 2009).

Citibank relies in large part on the Quebecor decision, which held that a series of transactions including the debtor's transfer of money into an account at Bank of America, the disbursement of those funds to the indenture trustee of the debtor's notes, and the retirement of those notes when the holders received payment constituted a "settlement payment." Official Comm. of Unsecured Creditors of Quebecor World (USA) Inc. v. Am. United Life Ins. Co. (In re Quebecor), 453 B.R. 201 (Bankr. S.D.N.Y. 2011). Citibank contends that the series of events in this case similarly falls within the definition of a settlement payment.

The Trustee asserts that the Deposit and Debit are not settlement payments protected under section 546(e). First, the Trustee argues that the payment to Citibank was made to secure Citibank's exposure under the LC, not to pay off the Bonds. Because a letter of credit is specifically exempted from the definition of security under section 101(49)(B)(i), the Trustee contends that the Deposit and Debit cannot be construed as settlement payments under section 741(8). Further, the Trustee asserts that Citibank has made no showing that collateralization of a letter of credit would commonly be termed a "settlement payment" by those who work in the public securities market. See

Plassein, 590 F.3d at 257-58 (holding that the most important element in determining if a transaction constitutes a settlement payment is if it "involved any other similar payment commonly used in the securities trade" and if it is a "common securities transaction").  Finally, the Trustee argues that even if a series of transactions ultimately includes a purchase or sale of a security, that does not automatically make each link in the chain of events a settlement payment, rather the Court must analyze each discrete transaction separately to determine whether it meets the definition of a settlement payment.  Mervyn's Holdings, LLC v. Lubert-Adler Grp., 426 B.R. 488, 500 (D. Del. 2010) (holding that section 546(e) did not apply because the individual transaction at issue, one in a series of transactions resulting in a securitization of real estate assets to obtain financing, did not meet the definition of settlement payment).

The Court agrees that Citibank has failed to establish that the Deposit and Debit are settlement payments protected by section 546(e).  The instant case is easily distinguishable from Quebecor where the only purpose of the transfer was to complete a securities transaction and there was no other independent obligation between the debtor and the financial institution. Quebecor, 453 B.R. at 215.  Here the Debtors made the payments to Citibank to fulfill an obligation independent from any securities transaction.  The Debtors paid Citibank in order to collateralize

8

Citibank's exposure under the LC.  This transaction is separate
and discrete from any payment of the Bonds.  <u>Mervyn's</u>, 426 B.R.
at 500.  Further, Citibank has not proven that payment on a
letter of credit is considered a settlement payment in the
securities industry or is a commonly used payment structure in a
securities transaction.  <u>Plassein</u>, 590 F.3d at 257-58.  The
payment of a letter of credit is specifically excluded from the
definition of a security and thus any payment on a letter of
credit cannot comprise a settlement payment.  11 U.S.C. §
101(49)(B)(i).

Citibank argues nonetheless that the Deposit and Debit were
made "in connection with a securities contract" and therefore
still fall within the safe harbor provisions of section 546(e).
The definition of a securities contract includes "other credit
enhancement[s] related to" a securities contract.  11 U.S.C. §
741(7)(A)(i)-(x).  Citibank argues, therefore, that the Bonds
(and their Indenture) are "securities contracts."  <u>See</u> <u>Alden v.
Maine</u>, 527 U.S. 706, 804 n.38 ("bonds [are] binding contracts");
<u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1409 n.1 (3d Cir. 1993) ("An
indenture is a contract . . . .").  Because the Trustee has
admitted that the LC is a credit enhancement to the Bonds and the
Indenture, Citibank contends that the payment on the LC is
protected under section 546(e).

The Trustee responds that the LC is not a credit enhancement

9

to any of the securities contracts defined in section 741(7)(A).
The Trustee acknowledges that the LC is a credit enhancement to
the Bonds, but argues that bonds do not fall within the
Bankruptcy Code's definition of a securities contract.  11 U.S.C.
§ 741(7)(A).

Although it is settled law that bonds and indentures are
contracts, the Court is not persuaded that the Bonds and
Indenture are securities contracts within the definitions in the
Bankruptcy Code.  Therefore, the Court cannot conclude that the
Deposit and Debit made in connection with the LC (even if the LC
was a credit enhancement to the Bonds) were "in connection with a
securities contract" and protected by section 546(e).

2.    Fully-Secured Creditor Status

Citibank asserts that it was a fully-secured creditor that
released its security interest in exchange for new value and
therefore could not have been the recipient of a preference.  A
transfer is a preference only if it entitles the transferee to
more than it would have received pursuant to a chapter 7
liquidation.  11 U.S.C. § 547(b)(5).  Because a fully-secured
creditor would be entitled to payment in full before other
creditors in a chapter 7 liquidation, any payment to that secured
party could not possibly be for more than it would receive in a
liquidation.  See Burtch v. Conn. Cmty. Bank, N.A. (In re J.
Silver Clothing, Inc.), 453 B.R. 518, 533 (Bankr. D. Del. 2011)

10

("In a Chapter 7 liquidation, the [secured creditor] would receive priority over the unsecured creditors and therefore would receive payment in full."). Citibank argues that because the LC Agreement granted it a security interest in all of the Debtors' "goods, documents, instruments, securities, general intangibles, policies of insurance, and the proceeds and products thereof, in which Applicant may have or obtain any interest in connection with the Credit, or any underlying transaction" as well as the Debtors' Citibank Account, it was a fully-secured creditor and therefore could not have received a preference.

The Trustee responds that Citibank was not a fully-secured creditor. The Trustee asserts that Citibank's reading of the liens granted to it in the LC Agreement is incorrect and overly broad. The Trustee argues that at this stage, where no evidence has been presented as to the scope of these liens or the value of any collateral, a determination of whether or to what extent Citibank was secured is premature. The Trustee contends that without knowing to what extent Citibank was secured, there can be no determination whether equivalent new value was given in exchange for the transfer.

The Court concludes that the determination of Citibank's secured status cannot be addressed at this stage. The Court must accept all of the Complaint's well-pleaded facts as true. Iqbal, 129 S. Ct. at 1949-50; Fowler, 578 F.3d at 210-11. The Trustee

11

has claimed that the Deposit and Debit allowed Citibank to
receive more than it would have received in a liquidation and the
Court must "assume the[] veracity" of all facts pled in the
Complaint.  Therefore, the Court concludes that the Trustee has
stated a claim for avoidance of a preference.

        3.   Deficient Pleading of Deposit

    Citibank contends that the Trustee's complaint is facially
deficient as to the Deposit preference claim because it fails to
specify the name of the transferor.  See Gellert v. The Lenick
Co. (In re Crucible Materials Corp.), No. 09-11582, 2011 WL
2669113, at *2 (holding that a preference complaint must allege
"the name of the debtor/transferor"); OHC Liquidation Trust v.
Credit Suisse First Bos. (In re Oakwood Homes Corp.), 340 B.R.
510, 522 (Bankr. D. Del. 2006) (same); Valley Media Inc. v.
Borders, Inc. (In re Valley Media, Inc.), 288 B.R. 189, 192
(Bankr. D. Del. 2003) (same).  Citibank argues that while the
Complaint states that "QR directed substantial deposits to its
Citibank account," it fails to identify which entity actually
made the Deposit.

    The Trustee responds that he has sufficiently specified the
entity that made the transfer.  The Complaint defines QR as
Qimonda Richmond, LLC, one of the Debtor entities.  Because the
Complaint states that QR directed the Deposit to the Citibank
account the Trustee contends that nothing more is required to

12

plead the identity of the transferor.  In re Oakwood Homes Corp.,
340 B.R. at 522 (holding that fair notice of the identities of
the transferors is all that is required).

The Court finds that the Trustee's Complaint sufficiently
identifies the transferor.  "QR" was clearly identified by the
Complaint as Qimonda Richmond, LLC.  The Complaint plainly
alleges that QR directed the Deposits be made.  Assuming all
reasonable inferences that can be drawn from those allegations in
favor of the Trustee, the Court finds that the Complaint
adequately alleges that the funds were property of the Debtors.
See, e.g., Iqbal, 129 S. Ct. at 1949.

C.   Recovery of Setoff

Citibank contends that it had a valid setoff right pursuant
to section 553(a) of the Bankruptcy Code that was triggered by
the Debtors' default on the LC Agreement, namely the Debtors'
bankruptcy filing.  Citibank argues that because of this setoff
right it is immune from an avoidance claim.  11 U.S.C. § 553(a)
("this title does not affect any right of a creditor to offset a
mutual debt owing by such creditor to the debtor that arose
before commencement of the case under this title against a claim
of such creditor against the debtor that arose before the
commencement of the case").  See also Braniff Airways, Inc. v.
Exxon Co., 814 F.2d 1030, 1034 (5th Cir. 1987) (holding that
because section 553 grants a creditor secured status for the

13

amount of an allowed setoff, the payments to that creditor cannot
be preferential).

The Trustee responds that Citibank had no valid setoff right
and therefore section 553 does not apply.  The only default of
the LC Agreement alleged by Citibank was the filing of bankruptcy
by the Debtors.  The Trustee argues, therefore, that the setoff
right vested, if at all, only on the Petition Date.  However, the
Debit occurred nearly two months before that (on January 2, 2009)
and, at that time, Citibank had no valid setoff right.

In addition, the Trustee contends that even if section 553
is applied, the entire amount of Citibank's setoff is invalid
pursuant to section 553(b) because there was an insufficiency 90
days before the Petition Date.[2]  For the purposes of setoff,
insufficiency is the amount by which a creditor's claim against a
debtor exceeds that debtor's claim against the creditor.  11
U.S.C. § 553(b)(2).  The Trustee argues that 90 days before the
Petition Date, the Debtors' balance in the Citibank Account was
zero, giving Citibank an insufficiency of over $33 million in

---

[2]  Section 553(b) states that "if a creditor offsets a
mutual debt owing to the debtor against a claim against the
debtor on or within 90 days before the date of the filing of the
petition, then the trustee may recover from such creditor the
amount so offset to the extent that any insufficiency on the date
of such setoff is less than the insufficiency on the later of (A)
90 days before the date of the filing of the petition and (B) the
first date during the 90 days immediately preceding the date of
the filing of the petition on which there is an insufficiency."
11 U.S.C. § 553(b).

14

contrast to the zero insufficiency that existed on the payment date of January 2, 2009.  Because the insufficiency 90 days before the Petition Date was zero, the Trustee asserts that the entire amount of Citibank's claimed setoff right is invalid pursuant to section 553(b).

The Trustee further alleges that the Deposit itself may have been intentionally designed by Citibank to obtain a right to setoff.  Section 553(a)(3) prohibits a creditor from exercising a right to setoff if that creditor only incurred the debt it owes to the debtor for the purpose of obtaining the right to setoff. See Woodrum v. Ford Motor Credit Co. (In re Dillard Ford, Inc.), 940 F.2d 1507, 1513 (11th Cir. 1991) (finding that the purpose of section 553(a)(3) is to "prevent the courts from rewarding creditors who persuade a debtor to engage in conduct which has the effect of impermissibly improving the creditor's position among the other creditors").  The Trustee argues that the back-to-back Deposit and Debit scheme raises questions as to whether Citibank designed this scheme specifically to obtain a right of setoff, thus prohibiting it from exercising that right under section 553(a)(3).

Citibank responds that section 553(b) does not apply to its setoff right because its claim against the Debtor was fully secured and that section only applies to unsecured claims. Citibank further argues that, because the Trustee failed to

15

assert a section 553(a)(3) claim in the Complaint, it is barred from raising the issue now.

The Court agrees that the Trustee is barred from raising allegations under section 553(a)(3) that Citibank arranged the Deposit in order to obtain a right to setoff.  The Trustee's Complaint only sought to avoid and recover Citibank's setoff pursuant to section 553(b) and the Trustee may not assert additional claims in his opposition brief.  See Commonwealth of Pa. ex rel Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

However, the Court disagrees with Citibank's argument that the Trustee fails to state a claim under section 553(b). Citibank's claim that section 553(b) does not pertain because it was a fully-secured creditor, as previously discussed, is a disputed issue of fact that cannot be determined at this stage. The Trustee has asserted that Citibank was not fully-secured and that must be assumed as true at this stage.  Iqbal, 129 S. Ct. at 1949-50 ("When there are well-pleaded factual allegations, a court should assume their veracity . . . .").  Therefore, the Court concludes that the Trustee has adequately stated a claim for avoidance of the Deposit as a preference.

D.   Constructive Fraudulent Transfer

The Trustee contends that the Additional Pledge and the

16

Deposit are avoidable as fraudulent transfers.  See 11 U.S.C. §
548 (stating that a trustee may avoid a transfer made within two
years of the petition date if the debtor received less than
equivalent value for the transfer and was insolvent at the time
of transfer or became insolvent by the transfer, was
undercapitalized, or intended or believed it would incur debts
beyond the debtor's ability to pay as they matured).  The Trustee
asserts that the Additional Pledge and the Deposit gave Citibank
substantial additional collateral.  The Trustee argues that these
were "gratuitous transfers" made by the Debtors for no value.
Additionally, the Trustee contends that the Debtors were
insolvent on the dates of the Additional Pledge and Deposit, were
engaging in business for which they had unreasonably small
capital, and were incurring debts that would be beyond their
ability to pay.

Citibank disputes the Trustee's conclusory allegations that
the transfers were "gratuitous."  Citibank contends that the
Additional Pledge and Deposit were made to secure the Debtors'
obligations under the LC, constituting reasonably equivalent
value or fair consideration.[3]  See N.Y. Debt. & Cred. Law § 272
(McKinney 2012) (stating that fair consideration includes

---

[3]  The Complaint also asserted fraudulent transfer claims
under relevant state law, which in this matter is New York Law.
The test under New York Law is substantially similar, but uses
the term "fair consideration" instead of "reasonably equivalent
value."  N.Y. Debt. & Cred. Law §§ 273-75 (McKinney 2012).

satisfying or securing an antecedent debt); <u>Walker v. Sonafi
Pasteur (In re Aphton Corp.)</u>, 423 B.R. 76, 89 (Bankr. D. Del.
2010) (applying the Third Circuit's "totality of the
circumstances" test, the court found that "when a transfer is
made to pay an antecedent debt, the transfer may not be set aside
as constructively fraudulent"); <u>In re Oakwood Homes Corp.</u>, 342
B.R. 59, 71 n.4 (Bankr. D. Del. 2006) (stating that a pledge of
collateral may be subject to a motion to dismiss on the issue of
reasonably equivalent value); <u>Pardo v. Gonzaba (In re APF Co.)</u>,
308 B.R. 183, 187 (Bankr. D. Del. 2004) (holding that cash
payments made on a promissory note constituted value in
satisfaction of an antecedent debt).  Citibank also argues that
the Deposit was not a fraudulent transfer because the Debtors
received reasonably equivalent value by Citibank's release of its
lien from the Additional Pledge and the remaining funds in the
Citibank Account, as well as from the retirement of the Bonds.

The Trustee responds that Citibank's proposed "per se" rule
that a transfer to secure an antecedent debt can never be a
fraudulent conveyance conflicts with the Third Circuit's totality
of the circumstances test.  <u>Mellon Bank, N.A. v. Official Comm.
of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc)</u>, 92
F.3d 139, 153 (3d Cir. 1996) (holding that to determine
reasonably equivalent value, a court should apply a totality of
the circumstances test).  Moreover, the Trustee argues that the

18

independence principle prohibits Citibank from asserting that the repayment of the Bonds was value the Debtors received in exchange for the Deposit because Citibank had an independent obligation under the LC to make that payment to the Indenture Trustee regardless of any payment from the Debtors.  See In re P.A. Bergner & Co., 140 F.3d 1111, 1120-21 (7th Cir. 1998) (holding that the relationship between the account party and the issuing bank on a letter of credit is completely independent from the relationship between the beneficiary of the letter of credit and the issuing bank).

The Court finds that the issue of "reasonably equivalent value" requires a factual determination that cannot be made on a motion to dismiss.  The Third Circuit requires the application of a "totality of the circumstances" test, including consideration of factors such as market value, good faith, and whether the transaction was at arms length.  In re R.M.L., Inc, 92 F.3d at 153.  The Trustee has adequately alleged that reasonably equivalent value was not provided by Citibank in connection with the Deposit and the Additional Pledge sufficient to withstand a motion to dismiss.


IV.  CONCLUSION

For the foregoing reasons, the Court concludes that Citibank's Motion to Dismiss will be denied.

19

An appropriate Order is attached.


Dated: March 26, 2012                    BY THE COURT:


                                         Mary F. Walrath
                                         United States Bankruptcy Judge